**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **KENYA HAYES,** | : |
| Plaintiff | : |
| v. | : CIVIL ACTION NO. 1:13-2311 |
| **CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,** | :   (JUDGE MANNION) |
| | : |
| Defendant | : |

**MEMORANDUM**

**Introduction**

Plaintiff Kenya Hayes has filed this action pursuant to 42 U.S.C. §405(g) seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Hayes' claim for social security disability insurance benefits and supplemental security income benefits.

Disability insurance benefits are paid to an individual if that individual is disabled and "insured." Hayes met the insured status requirements of the Social Security Act through December 31, 2012. Tr. 13.[1] Therefore, to be entitled to disability insurance benefits, Hayes must establish that she suffered from a disability on or before that date. 42 U.S.C. §423(a)(1)(A).

---

[1]References to "Tr. " are to pages of the administrative record filed by the Defendant as part of the Defendant's Answer.

Hayes protectively filed her applications for social security disability insurance benefits and supplemental security income benefits on November 5, 2010, claiming that she became disabled on August 1, 2008 and November 22, 2008, respectively. Tr. 85, 89. Hayes has been diagnosed with obesity, carpal tunnel syndrome, fibromyalgia, and Raynaud's phenomenon. Tr. 14. On March 30, 2011, Hayes' applications were denied by the Bureau of Disability Determination. Tr. 61, 66.

On May 2, 2011, Hayes requested a hearing before an administrative law judge ("ALJ"). Tr. 71. The ALJ conducted a hearing on March 28, 2012, where Hayes was represented by an attorney. Tr. 27-51. On May 25, 2012, the ALJ issued a decision denying Hayes' applications. Tr. 11-21. On July 1, 2013, the Appeals Council declined to grant review. Tr. 1. Hayes subsequently filed a complaint before this Court on September 4, 2013, and this case became ripe for disposition on February 14, 2014, when Hayes declined to file a reply brief.

Hayes appeals the ALJ's decision on the sole ground that the ALJ's residual functional capacity determination was unsupported by substantial evidence. For the reasons set forth below, the decision of the Commission is affirmed.

2

**Statement of Relevant Facts**

Hayes was thirty years of age at the time of the ALJ's decision. She has a high school education, and is able to read, write, speak, and understand the English language. Tr. 31, 115. Hayes' past relevant work includes work as a grocery store cashier/clerk, which is classified as light, semi-skilled work, as a cashier, which is light, unskilled work, and as a teaching assistant, which is classified as light, semi-skilled work. Tr. 47.

### A. Hayes' Physical Impairments

On December 28, 2009, Hayes presented to Manju Chanana, M.D. complaining of numbness in her hands. Tr. 149. Hayes denied fatigue, heat intolerance, cold intolerance, muscle pain, joint pain, stiffness, or swelling. Tr. 150. A physical examination revealed no cervical or paralumbar tenderness, though Hayes was obese. Id. Dr. Chanana referred Hayes to a neurologist for evaluation of her hand numbness. Tr. 151.

On February 9, 2010, Hayes presented for a neurological evaluation with Ralf Van Der Sluis, M.D. and Nathan Carr, PA-C. Tr. 263-66. Hayes complained of numbness in her hands that had been present for two to three years and had grown progressively worse. Tr. 263. Hayes had full strength throughout her body except that her grip strength was 5-/5. Tr. 265. She had

3

normal muscle tone with no atrophy, intact sensation, nearly full reflexes, and no gait disturbance. Id. Dr. Van Der Sluis noted that Tinel and Phalen tests were positive bilaterally, indicating carpal tunnel syndrome. Id. Hayes was diagnosed with C5-6 radiculopathy and "carpal tunnel syndrome versus Raynaud's phenomenon."[2] Tr. 266.

Hayes returned to Dr. Van Der Sluis and Mr. Carr on February 18, 2010 and March 24, 2010 with unchanged symptomology and similar physical examination findings. Tr. 241-42, 261-62. Dr. Van Der Sluis noted that a February 17, 2010 EMG test of the upper extremities revealed "bilateral carpal tunnel syndrome[.]" Tr. 241. A blood test was positive for the presence of ANA and revealed increased sedimentation rates, both of which were indicative of lupus or mixed connective tissue disorder. Tr. 229. Based on these test results, Dr. Van Der Sluis referred Hayes to a rheumatologist. Tr. 241.

---

[2]Raynaud's phenomenon "is a condition that causes some areas of your body . . . to feel numb and cool in response to cold temperatures or stress. In Raynaud's disease, smaller arteries that supply blood to your skin narrow, limiting blood circulation to affected areas . . . Treatment of Raynaud's disease depends on its severity and whether you have any other health conditions. For most people, Raynaud's disease is more a nuisance than a disability." Mayoclinic.org, Raynaud's Disease Definition, *available at* http://www.mayoclinic.org/diseases-conditions/raynauds-disease/basics/definition/CON-20022916 (last visited October 2, 2014).

On July 27, 2010, Hayes presented to Mr. Carr with continued complaints of widespread pain and discomfort. Tr. 257. A physical examination was unchanged from previous visits. Id. On October 26, 2010, Mr. Carr noted that Hayes had full strength in her extremities with brisk and hyperactive reflexes. Tr. 255. A slump test was negative, though Hayes did have swelling in the DIP and PIP hand joints bilaterally. Id. Mr. Carr noted that Hayes was using wrist splints for her carpal tunnel syndrome "with success." Id. Mr. Carr prescribed Mobic and instructed Hayes to continue using her wrist splints. Id.

On December 6, 2010, Hayes was examined by Kristin Ingraham, D.O. for a rheumatology consultation. Tr. 286-87. Hayes complained of "Raynaud's phenomenon with classic white, purple, and red color changes with cold exposure, also joint pain [localized] to the PIPs, MCPs of the bilateral hands[.]" Tr. 286. Dr. Ingraham observed a full, painless range of motion in Hayes' shoulder, elbows, wrists, and hands. Tr. 287. Hayes had tender PIP and MCP joints bilaterally. Id. Dr. Ingraham diagnosed Hayes with "positive autoantibodies with Raynaud's phenomenon" and "small joints symmetric arthritis." Id.

On November 10, 2010 Hayes was examined by Raul Tanguilig, P.T.

Tr. 309-10. Hayes had 4-/5 strength in her wrists and slightly reduced range of motion in her wrists bilaterally, but was able to power grip and precision grip. Tr. 309. She had diminished sensation in both hands, but had full reflexes throughout. Tr. 310. Hayes attended fifteen physical therapy sessions lasting into February 2011. Tr. 312-22, 325-27.

Hayes returned to Mr. Carr on January 10, 2011 with continued complaints of pain throughout her joints. Tr. 323. Hayes was in no acute distress, and a physical examination was largely unchanged. Id. Mr. Carr diagnosed Hayes with lupus and continued Hayes on physical therapy and ibuprofen. Id.

On March 25, 2011, Hayes returned to Dr. Ingraham for a follow-up appointment related to fatigue. Tr. 362. Hayes complained that she was having blurry vision in response to her Plaquenil medication, though an ophthalmology checkup "was fine." Id. On August 12, 2011, Dr. Ingraham noted a decreased range of motion in Hayes' right arm. Tr. 364. Hayes complained of right arm pain and an inability to move her fingers. Id. Dr. Ingraham diagnosed Hayes with mixed connective tissue disease, arthritis, Raynaud's phenomenon, anemia, and systemic inflammation. Tr. 365.

### B.  Residual Functional Capacity Assessments

On March 26, 2010, Sethuraman Muthiah, M.D. examined Hayes and completed a residual functional capacity assessment. Tr. 185-97. Hayes complained of numbness and pain in her hands accompanied by difficulty handling and gripping objects. Tr. 185. She had normal muscle tone and reflexes, but had tenderness in the proximal and distal interphalangeal joints of her hands. Tr. 186-87. Hayes had positive Tinel's signs bilaterally and "minimal" swelling in the proximal interphalangeal joints bilaterally. Tr. 187. Dr. Muthiah diagnosed Hayes with carpal tunnel syndrome, morbid obesity, and "either early rheumatoid arthritis [or] collagen vascular disease." Tr. 187.

Hayes had slightly reduced range of motion in her wrists and hands. Tr. 193, 196-97. Her sensation was normal and she had normal motor power, normal reflexes, and no neurological deficits. Tr. 188. Hayes' grip strength was 4/5 bilaterally. Id. Dr. Muthiah believed that Hayes' pain was "likely to improve" with the use of anti-inflammatory drugs. Id.

Dr. Muthiah opined that Hayes was unable to lift or carry anything "because of her acute pain in hands." Tr. 187. He believed that Hayes could only stand or walk for one to two hours, but did not have any limitations in her ability to sit. Id. Dr. Muthiah opined that Hayes could occasionally bend,

kneel, stoop, crouch, balance, or climb. Tr. 195. Hayes would have difficulty handling or reaching objects, and should have only limited exposure to temperature extremes. Tr. 187.

On April 15, 2010, Jan Kapcala, D.O. reviewed Hayes' medical records and completed a residual functional capacity assessment. Tr. 217-23. Dr. Kapcala opined that Hayes could occasionally lift or carry twenty pounds, and could frequently lift or carry ten pounds. Tr. 218. Hayes could occasionally balance, stoop, kneel, crouch, crawl, or climb ladders. Tr. 219. She could frequently climb stairs and ramps, but could never climb ropes or scaffolds. Id. Dr. Kapcala believed that Hayes could frequently handle objects with both hands and could occasionally perform fingering actions with both hands. Id. Hayes must avoid concentrated exposure to extreme cold and avoid even moderate exposure to hazards. Tr. 220.

On March 10, 2011, Sharon Wander, M.D. completed a medical record review and assessed Hayes' residual functional capacity. Tr. 335-41. Dr. Wander opined that Hayes could occasionally lift or carry twenty pounds and could frequently lift or carry ten pounds. Tr. 336. Dr. Wander further believed that Hayes must avoid concentrated exposure to extreme cold. Tr. 338. Dr. Wander stated that Hayes' medical record revealed that her treatment and

medications "had generally been successful in controlling" her symptoms. Tr. 340.

### C. The Administrative Hearing

On March 28, 2012, Hayes' administrative hearing was conducted. Tr. 27-51. At the hearing, Hayes testified that she had left her last job due to a "high-risk pregnancy." Tr. 31. Hayes stated that she was unable to work due to pain in her back and legs, and because she was incapable of lifting any objects due to issues with her hands. Tr. 32. Hayes testified that her treating physician, Dr. Ingraham, had advised her that she could not "lift anything." Tr. 34. Hayes testified that Raynaud's syndrome would cause her hands to turn "red, white and blue" and caused numbness for two to three hours. Tr. 38. When experiencing a flare-up of Raynaud's syndrome, Hayes could not use her hands at all. Tr. 38-39. These flare-ups occurred approximately five times each day, and Hayes stated that there was nothing she could do to ameliorate the situation. Id. Hayes testified that her medications did not "work that well" and only "sometimes" eased her pain. Tr. 33.

Hayes stated that she had not been able to brush her teeth or feed herself since August 2008. Tr. 34-35. Hayes testified that she was unable to pick up or feed her daughter since giving birth to her. Tr. 35. Hayes was

9

unable to bathe herself, and stated that her mother needed bathe her and help her dress Tr. 37. Hayes spent her days reading and watching television. Tr. 38.

After Hayes testified, her mother offered testimony. Tr. 43-47. Mary Hayes testified that for two or three years she often had to assist her daughter with showering, brushing her teeth, and dressing. Tr. 43-44. Hayes sometimes needed assistance eating, depending upon the extent of her Raynaud's phenomenon flare-up. Tr. 46-47. Mary Hayes testified that her daughter was unable to hold any objects because her hands would turn "red, white and blue." Tr. 45. She testified that Hayes was unable to do any chores around the house. Tr. 46.

After Hayes and her mother testified, Carmine Abraham, an impartial vocational expert, was called to give testimony. Tr. 47. The ALJ asked Ms. Abraham to assume a hypothetical individual with Hayes' age, education, and work experience who could perform light work[3] that did not involve any

---

[3] Light Work is defined by the regulations of the Social Security Administration as work "with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light

crawling, kneeling, or climbing. Tr. 47-48. The individual could finger or handle with her hands on a less than frequent basis. Tr. 48. The individual must avoid exposure to temperature extremes, high humidity, or vibration. Id.

Under this hypothetical, Ms. Abraham testified that the individual would be unable to perform Hayes' past work. Id. However, the individual would be able to perform three jobs that exist in significant numbers in the national economy: a machine tender, desk guard, or hostess. Tr. 48-49. Ms. Abraham testified that an individual would be precluded from any work at the light or sedentary exertional level if she were unable to use her hands for fingering or handling. Tr. 49.

**Discussion**

In an action under 42 U.S.C. §405(g) to review the Commissioner's decision denying a plaintiff's claim for disability benefits, the district court must uphold the findings of the Commissioner so long as those findings are supported by substantial evidence. Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence

---

work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §416.967.

as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). In an adequately developed record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981), and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson v.

Comm'r of Soc. Sec., 529 F.3d 198, 203 (3d Cir. 2008). Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

The Commissioner utilizes a five-step process in evaluating disability insurance benefits claims. See 20 C.F.R. §404.1520; Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 91-92 (3d Cir. 2007). This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity, (2) has an impairment that is severe or a combination of impairments that is severe, (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment, (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §404.1520. The initial burden to prove disability and inability to engage in past relevant work rests on the claimant. If the claimant meets this burden, the burden then shifts to the Commissioner to show that a job or jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Mason, 994 F.2d at 1064.

### A. The ALJ's Credibility Determination

Hayes challenges the ALJ's residual functional capacity determination as it relates to Hayes' ability to use her hands. Much of the ALJ's residual functional capacity determination was based upon his credibility determination and ultimate decision to find the testimony of Hayes and her mother less than fully credible.

"Allegations of pain and other subjective symptoms must be supported by objective medical evidence." Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) (citing 20 C.F.R. §404.1529). Where an ALJ reaches a credibility determination, that determination is entitled to deference by the district court because the ALJ "has the opportunity at a hearing to assess a witness's demeanor." Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003).

Here, the ALJ found that Hayes' medically determinable impairments "could reasonably be expected to cause the alleged symptoms," but found that her statements and the statements of her mother "concerning the intensity, persistence and limiting effects of these symptoms" were not fully credible. Tr. 15. The ALJ ultimately determined that Hayes' "subjective complaints and limitations are rather grossly overstated." Tr. 16.

In reaching that conclusion, the ALJ noted that objective findings did

not support Hayes' alleged limitations. Id. In that respect, the ALJ noted that during a December 2009 appointment, Hayes denied fatigue, muscle pain, joint pain, stiffness, or swelling. Tr. 16, 149-50. Similarly, during a February 2010 appointment with Dr. Van Der Sluis, Hayes had full strength in her extremities, normal muscle tone without atrophy, and only mildly decreased grip strength. Tr. 16, 263-65. The ALJ noted that Dr. Van Der Sluis' physical examination findings were substantially similar at all other anointments. Tr. 17. Hayes had a full, painless range of motion in all joints during her initial appointment with Dr. Ingraham and findings at subsequent appointments were "normal." Tr. 17. In November 2010, Hayes had only slightly diminished strength in her wrists, and was able to power grip and precision grip with her hands. Tr. 309.

The ALJ further believed that Hayes' infrequent medical care and appointments militated against the credibility of the witnesses. Tr. 17. The ALJ noted that there was no documentation of Hayes' allegedly severe limitations in any medical records, and believed that the lack of aggressive treatment indicated that Hayes was not as limited as she and her mother claimed. Tr. 19. In that vein, though Hayes and her mother testified that she had been unable to use her hands since August 2008, Hayes did not seek

treatment for her condition until December 2009. Tr. 149-50. During the year preceding her administrative hearing, Hayes had only three medical appointments related to her impairment. Tr. 362-67. No doctor ever noted any symptoms that were consistent with, or even close to, the symptoms and limitations that Hayes and her mother testified to at the administrative hearing.

The ALJ also found that Hayes' activity levels were inconsistent with the testimony offered at the administrative hearing. Tr. 19. In the functional report that Hayes completed on December 6, 2010, she reported bathing, dressing, and feeding her daughter. Tr. 122-23. Hayes reported that she "sometimes" needed help getting in and out of the shower and maintaining her hair. Tr. 124. Hayes stated that she was able to prepare sandwiches and frozen meals. Id. She did the laundry once per week, ironed once per week, made her bed daily, and vacuumed once per week. Id. Hayes was able to shop for groceries once per week. Tr. 125. Hayes also stated that she was able to lift up to twenty pounds. Tr. 127. These activities are irreconcilably inconsistent with Hayes' testimony that, as of August 2008, she was unable to use her hands in any capacity or lift any objects. Tr. 34.

The ALJ provided well-reasoned, well-supported explanations for his

decision to discredit the testimony of Hayes and her mother. Tr. 15-19. The lack of objective findings supporting Hayes' alleged symptoms, the failure to seek more frequent or aggressive treatment, and Hayes' self-reported activities of daily living all were valid reasons for the ALJ to partially discount the credibility of Hayes and her mother. Consequently, the ALJ's credibility determination was supported by substantial evidence, and no grounds exist upon which to disturb that determination.

### B.    Evaluation of the Opinion Evidence

Hayes also argues that the ALJ erroneously rejected the opinion of Dr. Muthiah, an examining physician. In this case there was no treating physician opinion. The only available medical opinions came from one examining physician and two non-examining physicians. Tr. 185-97, 217-23, 335-41.

In the event that the administrative record contains conflicting medical opinions, it is the ALJ's responsibility to weigh those medical opinions and decide which opinion(s) is entitled to greater weight. See, 20 C.F.R. §404.1527. In weighing the medical opinions, the ALJ accorded "little weight" to the opinion of Dr. Muthiah and accorded "significant weight" to the opinions of Drs. Kapcala and Wander. Tr. 18. The ALJ reasoned that Dr. Muthiah's opinion was not supported by his "fairly normal" physical findings or by the

objective evidence of record. Id. Furthermore, the ALJ believed that Dr. Muthiah's opinion was based primarily on Hayes' subjective complaints. Id. In contrast, the ALJ gave significant weight to the opinion of Drs. Kapcala and Wander because they were "generally consistent with and supported by the objective findings[.]" Id.

The medical records reveal that at a December 2009 appointment with Dr. Chanana, Hayes denied fatigue, cold intolerance, muscle pain, joint pain, stiffness, or swelling. Tr. 150. In February 2010, Hayes had full strength throughout her body, except that her grip strength was slightly reduced to 5-/5. Tr. 265. Hayes had normal muscle tone with no atrophy, intact sensation, and nearly full reflexes. Id. Hayes had similar physical examination findings at her follow-up appointments throughout 2010. Tr. 241-42, 255, 257, 261-62. In November 2010, Hayes had only a slightly reduced range of motion and slightly reduced strength in her wrists bilaterally, but was able to power grip and precision grip. Tr. 309-10. In December 2010, Dr. Ingraham observed a full, painless range of motion in Hayes' shoulder, elbows, wrists, and hands. Tr. 287.

These objective findings support the conclusion that Hayes was able to use her hands to a greater extent than she alleged, and supported the

conclusions of Drs. Kapcala and Wander that Hayes was capable of light work. The normal strength findings contained throughout the administrative record also diminish the weight of Dr. Muthiah's opinion as it related to Hayes' ability to lift or carry objects. Furthermore, Dr. Muthiah's opinion was largely based upon Hayes' subjective complaints. The ALJ properly found that Hayes was less than credible, and therefore did not err in according less weight to Dr. Muthiah's opinion on that basis.

Having been presented with differing opinions, one indicating that Hayes was disabled and two indicating that Hayes was capable of performing light work, the ALJ was required to credit one opinion over another. The ALJ properly rejected the opinion of the one-time examining physician and credited the opinions presented by the two non-examining physicians. This decision was supported by substantial evidence. See, Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 362 (3d Cir. 2011) (a non-examining state agency physician opinion may constitute substantial evidence where that opinion "was properly considered by the ALJ"). In sum, the ALJ's residual functional capacity determination was supported by the record as a whole.

**Conclusion**

A review of the administrative record reveals that the decision of the Commissioner is supported by substantial evidence. Pursuant to 42 U.S.C. §405(g), the decision of the Commissioner affirmed. An appropriate Order will be entered.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

Dated: October 16, 2014
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2013 MEMORANDA\13-2311-01.wpd